IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Jerry Wayne Barnes, | ) | Case No.: 09-00600-BGC7 |
| | ) | |
| Debtor. | ) | |
| Jerry Wayne Barnes, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AP No.: 09-00111-BGC |
| | ) | |
| Vision Bank, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion on the
Plaintiff's Motion to Dismiss Defendant's Counterclaim**

The debtor filed the pending complaint on May 11, 2009. Docket No. 1. The defendant filed an answer and counterclaim on June 12, 2009. Docket No. 9. The matter before the Court is the June 22, 2009, Plaintiff's Motion To Dismiss Defendant's Counterclaim. Docket No. 10. A hearing was held on August 5, 2009. Appearing were the debtor-plaintiff, Mr. Jerry Wayne Barnes; his attorney, Mr. Steven D. Altmann; and Mr. Richard M. Gaal, the attorney for Vision Bank, the defendant. The matter was submitted on the pleadings, the record in this case, and the arguments and briefs of counsel.

**I. Background**

In his complaint, the debtor-plaintiff seeks to avoid a judicial lien pursuant to sections 522(h) and 547(b) of the Bankruptcy Code. 11 U.S.C. §§ 522(h) and 547(b). Docket No. 1. In its counterclaim, Vision Bank, the defendant-creditor who holds the lien, seeks to revoke the debtor's Chapter 7 discharge pursuant to section 727(d) of the Bankruptcy Code. 11 U.S.C. §727. Docket No. 9.[1] The only matter before the Court at this time is the debtor-plaintiff's request to dismiss the counterclaim.

---

[1] The debtor's discharge was entered on May 14, 2009. Docket No. 26.

## II. The Debtor's Burden

The debtor's motion to dismiss the defendant's "complaint" is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] The law in this Circuit is that this Court may not dismiss a complaint under that rule, "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); accord Burch v. Apalachee Community Mental Health Servs., Inc., 840 F.2d 797, 798 (11th Cir.1988) (en banc), cert. granted, 489 U.S. 1064, 109 S.Ct. 1337, 103 L.Ed.2d 807 (1989)." Dunwoody Homeowners Ass'n, Inc. v. DeKalb County, Ga., 887 F.2d 1455, 1458 (11th Cir. 1989).

In addition, this Court must consider:

> When reviewing a motion to dismiss pursuant to Rule 12(b)(6), we take the material allegations of the complaint and its incorporated exhibits as true, Walker Process Equip. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174-75, 86 S.Ct. 347, 348-49, 15 L.Ed.2d 247 (1965), and liberally construe the complaint in favor of the plaintiff. See Fed.R.Civ.P. 8(f); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This standard of review mandates that we reverse the dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.

Burch v. Apalachee Community Mental Health Servs., Inc., 840 F.2d 797, 798 (11th Cir.1988) (en banc), cert. granted, 489 U.S. 1064 (1989), judgment affirmed, 494 U.S. 113 (1990).

## III. Vision Bank's Burden

Notwithstanding the burden the debtor must satisfy before the Court may dismiss the pending counterclaim complaint, as the discussion below demonstrates, the burden the bank must satisfy before the Court may revoke this debtor's discharge is even more difficult. This is particularly evident in the instant case because the proof offered by the bank relates to the nondischargeability of a specific debt or the denial of a discharge before it was entered, rather than to revocation of a discharge after it was entered. As such, the Court has compared the proofs necessary to effect those actions to determine whether the former proofs will satisfy the latter. The proofs are certainly not the same, and as this opinion explains, where certain proof may support a complaint to determine the nondischargeability of a debt or to deny entry of a discharge, it may not be sufficient to support a complaint to revoke a discharge.

---

[2] A court may dismiss a complaint under this rule if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.Pro 12(b)(6).

2

The per curiam opinion of the Court of Appeals for the Eleventh Circuit in In re Matos, Case No. 07-12628, 2008 WL 596744 (11th Cir. Mar 06, 2008) (unpublished opinion) explains why the burden to revoke discharge is different. It includes:

> An individual debtor's pre-bankruptcy debts are generally dischargeable in a Chapter 7 bankruptcy case. 11 U.S.C. § 727(a), (b). "Moreover, courts generally construe the statutory exceptions to discharge in bankruptcy 'liberally in favor of the debtor,' and recognize that '[t]he reasons for denying a discharge... must be real and substantial, not merely technical and conjectural.' " In re Miller, 39 F.3d 301, 304 (11th Cir.1994) (quoting In re Tully, 818 F.2d 106, 110 (1st Cir.1987)). This is so because revocation of a discharge in bankruptcy is an *extraordinary* remedy. See In re Bowman, 173 B.R. 922, 924 (9th Cir. BAP 1994).

Id. at *1 (emphasis in original).[3]

The opinion includes later:

> In considering whether to grant revocation of a discharge, a bankruptcy court should consider these factors: "[1] the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied ... [;][2] the intent behind the bankrupt's acts--were they wilful or was there a justifiable excuse; [3] was there injury to the creditors; and [4] is there some way the bankrupt could make amends for his conduct." In re Jones, 490 F.2d 452, 456 (5th Cir.1974) (citation omitted).

Id. at *2 (footnote omitted).

## IV. Vision Bank's Counterclaim

Vision Bank's counterclaim contains four counts.

---

[3] This opinion is cited pursuant to Unpublished Opinions, 11th Circuit Rule 36-2. It reads:

> An opinion shall be unpublished unless a majority of the panel decides to publish it. Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. If the text of an unpublished opinion is not available on the internet, a copy of the unpublished opinion must be attached to or incorporated within the brief, petition, motion or response in which such citation is made.

11th Cir. R. 36-2.

## A. Count I

Count I relies on both subsections (d)(1) and (d)(2) of section 727.[4]

### 1. Section 727(d)(1)

Subsection 727(d)(1) provides, "The court shall revoke a discharge... if: (1) such discharge was obtained through the fraud of the debtor, and the requesting party <u>did not know</u> of such fraud until after the granting of such discharge." 11 U.S.C. §727(d)(1) (emphasis added).

Vision Bank's Count I alleges that the debtor fraudulently and intentionally concealed assets from the trustee by not listing them on his bankruptcy petition. It alleges that in financial statements the debtor provided to Vision Bank before filing bankruptcy, the debtor listed assets he did not list later on his bankruptcy petition. Vision Bank concludes that the debtor necessarily concealed those unlisted assets from the trustee.

---

[4] Count I reads:

5. The allegations contained in each of the preceding paragraphs are incorporated herein by reference.

6. Any discharge that has been obtained by Barnes was obtained through fraud and /or under the circumstances outlined above, and Barnes would not have been entitled to discharge under 11 U.S.C. § 727(b).

7. Furthermore, Barnes has acquired property of the estate or become entitled to acquire property that would be property of the estate and knowingly and fraudulently failed to report the acquisition of or entitlement to such property or to deliver and surrender such property to the Chapter 7 Trustee.

8. The knowledge of this fraud and other circumstances supporting revocation of discharge came to Vision Bank's attention for the first time after the date the discharge order was entered by this Court.

9. The above facts would never warrant granting of discharge.

10. The Debtor's conduct violates 11 U.S.C. § 727(d)(1) and (2), and, therefore, Debtor's indebtedness to Vision Bank constitutes a debt that should not have been discharged.

<u>Answer and Counterclaim</u> at 4, Docket No. 9.

4

In contrast to its position, Vision Bank admits that: (1) prior to the bankruptcy, it received financial statements from the debtor that purportedly contained descriptions of the assets allegedly not listed by the debtor in his bankruptcy schedules; and (2) it knew that those assets were not listed by the debtor in his schedules. Therefore, Vision Bank knew, well prior to the date that the debtor received his discharge, of the alleged fraud upon which Count I of its counterclaim is based. In other words, it knew prior to the date that the discharge was granted that those assets had not been divulged to the trustee.

Because Vision Bank had that knowledge, it cannot, according to the allegations contained in its counterclaim, possibly satisfy the "did not know of such fraud until after the granting of such discharge" requirement of section 727(d)(1). 11 U.S.C. §727(d)(1).

### 2. Section 727(d)(2)

Subsection 727(d)(2) provides that the court shall revoke a discharge if, "the debtor <u>acquired property</u> that is <u>property of the estate</u>, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. §727(d)(2) (emphasis added).

### (a) Subsection 727(d)(2) and Property of the Estate

Subsection 727(d)(2)'s plain language supports a revocation of a debtor's discharge for non-disclosure or non-delivery of property only if that property: (1) is property over which the debtor obtained possession of, or an interest in, <u>after</u> filing a Chapter 7 petition; and (2) is "property of the estate," as that term is defined in section 541(a) of the Bankruptcy Code. 11 U.S.C. § 541(a).

"Property of the estate" under section 541 includes: (1) property that the debtor acquires or becomes entitled to acquire within 180 days after the date of the filing of the bankruptcy petition in the manner and means described in section 541(a)(5); (2) proceeds from property of the estate, as provided for in section 541(a)(6); and (3) any interest in property that the estate acquires after the commencement of the case as provided for in section 541(a)(7).

One commentary explains:

> This provision imposes a duty upon the debtor to report to the trustee any acquisitions of property <u>after the filing of the petition</u>. Whether or not such property belongs to the estate under subsections 541(a)(5), (6) and (7) is a matter the debtor may not safely undertake to determine. If the debtor guesses wrong, the door would be open, at least, to get to the next issue of whether there was some fraud or knowing retention involved.

5

6 Collier on Bankruptcy § 727.15[4] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. Rev.)(emphasis added).

Subsection (d)(2) of section 727 was intended to address, and plainly addresses, the non-disclosure or non-delivery of property that a debtor gains possession of, or an interest in, post-petition. The commentary in Annotation, Creditor's Right to Have Bankruptcy Discharge of Individual Debtor Revoked, Vacated, and Set Aside, 138 A.L.R. Fed 253 (1997) explains:

> The Bankruptcy Code (11 U.S.C.A. §§ 101 et seq.)(the Code) provides that certain property in which the debtor may acquire an interest, or a right to an interest, subsequent to the bankruptcy petition will become property of the bankruptcy estate. When that occurs, the debtor is required to disclose the existence of the ownership interest, or right to acquire such an interest, the value of the property, and any encumbrance against it, through an amendment to the Schedules, just as if the property was owned, or the right to acquire it obtained, before the bankruptcy petition was initially filed. The debtor may then claim any right of exemption which may arise, and the trustee may proceed to administer the asset in the same fashion as any other property of the estate. This property will commonly arise in a liquidation case through a bequest, inheritance, or devise to an individual debtor by which the debtor acquires, or becomes entitled to acquire, a property interest within 180 days after the date on which the bankruptcy petition was filed, or through the payment, or a right to payment, of proceeds of a life insurance policy or death benefit on which the debtor was a beneficiary within that same period. Where these events occur, the debtor is required to promptly disclose the existence of this property or right to the trustee and creditors, generally through an amendment to the Schedules. This requirement also applies to property interests or rights to interests which the individual debtor acquires within 180 days after the bankruptcy petition is filed through a marital property settlement agreement, or as a result of an interlocutory or final divorce decree. This latter event is rare, however, because the timing of the creation of such a property right is generally within the debtor's control, and where such a right appears possible, the debtor may be able to delay its vesting until after the 180–day period has expired.
>
> Where the debtor acquires a post–petition interest in property, or a right to acquire such an interest, and does not disclose this interest or right as required by the Bankruptcy Code, or conceals an interest in property acquired prior to the filing of the bankruptcy petition, one of the available remedies is a suit to revoke the bankruptcy discharge. If the debtor: (1) acquires or becomes entitled to acquire property which, if the debtor had obtained the interest prior to the initiation of the bankruptcy

6

case, would have been "property of the bankruptcy estate; and (2) "knowingly and fraudulently" fails to report the acquisition or entitlement which the debtor has to such property; or (3) knowingly and fraudulently fails to perform the statutory duty of surrender or delivery of such interest or right to the trustee, as appropriate, suit may be brought to revoke the debtor's discharge.

138 A.L.R. Fed. at 300-301.

The court in In re Markey, 378 B.R. 594 (Bankr. D. Minn. 2007) provided this explanation:

> The reason [that the Debtor's discharge could not be revoked pursuant to section 727(d)(2)] is that the Debtor did not commit the threshold act that triggers the remedy: she did not acquire these assets, or become entitled to acquire them, after her bankruptcy filing. She held them, in their raw form, when she filed. She did not convert any of them to liquid funds via sale, hypothecation, or other extraction of fungible value from their original form. She held them in the same form throughout the case and, indeed, has already been ordered to turn the assets themselves over to the Trustee. But however much she should have disclosed them in the first instance and then surrendered them early, her act of simply retaining them did not trigger revocation of discharge, given the plain meaning of the statute's verbs. So the Trustee's request for revocation of discharge on this category of assets fails as well.

Id. at 614-15 (parenthetical added) (emphasis in original).

### (b) Relationship of Property of the Estate to Property of the Debtor

The phrase "property of the debtor," is a term of art that describes the prepetition status of property that a debtor acquired or accumulated before filing bankruptcy. "Property of the estate" another term of art, describes the postpetition status of that which had formerly been "property of the debtor". Understanding the difference is crucial to resolving the matter before the Court.

These two terms of art are mutually exclusive and are distinguished from one another throughout the Bankruptcy Code. The most salient example is found in subsection (a)(2) of section 727, which provides:

    (a)    The court shall grant the debtor a discharge, unless--

        (2)    the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this

7

>   title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
>   (A) **property of the debtor**, within one year before the date of the filing of the petition; or
>
>   (B) **property of the estate**, after the date of the filing of the petition;

11 U.S.C. §727(a)(2)(emphasis added).

Why is "property of the <u>debtor</u>" used in reference to certain items transferred prior to a bankruptcy filing but the "property of the <u>estate</u>" is used in reference to certain items transferred after a bankruptcy filing? The answer is relatively simple. "Property of the <u>estate</u>" cannot come into existence until a bankruptcy petition is filed; therefore, it cannot exist before that event. Consequently, in the pending proceeding, because this debtor's "property of the estate" could not have existed prepetition, for purposes of section 727(d)(2), it could not have been "<u>acquired</u>" prepetition. It could have been "acquired" only <u>after</u> bankruptcy.

Sections 547, 548, and 549 of the Bankruptcy Code provide another example. Sections 547 and 548 allow a trustee to avoid <u>prepetition</u> preferences and fraudulent conveyances. In those sections, Congress specified the subject of those powers to be an, "interest of the debtor in property," because that is all a debtor has, and all that a debtor is able to transfer, before bankruptcy. The term "property of the estate" does not appear in either section because "property of the estate" does not already exist and therefore cannot be transferred before bankruptcy is filed.

In contrast, section 549 of the Bankruptcy Code allows the trustee to avoid <u>postpetition</u> transfers of "property of the estate," because "property of the estate" comes into existence after bankruptcy is filed.

### (c) Property "Acquired"

The terms "acquire" and "acquired" are also prominent in section 727(d)(2). The common, ordinary meaning of these terms is, "to gain possession of" or "to get by one's own efforts." <u>The American Heritage Dictionary</u>, P. 75 (Second College Edition 1985). In using the term in section 727(d)(2), Congress must have been referring to something that the debtor comes into possession of, or obtains an interest in, which he or she did not already have. As a matter of simple logic, one cannot possibly gain possession of something already possessed. Hence, if the debtor owned or had possession of certain property when he filed bankruptcy, as is alleged by Vision Bank, he cannot be said to have "acquired" the same <u>after</u> he filed bankruptcy.

8

Indeed, the words "acquired" and "acquisition" would be superfluous if the drafters of section 727(d)(2) had intended that section to include property held by the debtor prepetition. As such, the question of when the debtor "acquired" the property would be irrelevant. The malfeasance would lie in the debtor's failure to report or deliver ownership of, or interest in, the property regardless of when "acquired." Section 727(d)(2), therefore, necessarily refers strictly to property that the debtor obtained or gained ownership of or possession of after he filed his bankruptcy petition. Any different construction would run directly contrary to the plain meaning of the statutory language.

In addition, if section 727(d)(2) is construed, in contradiction to its own plain language, to include property that a debtor owned prepetition, it would duplicate the field of operation accorded section 727(d)(1). One or the other would, therefore, be superfluous and the lack of knowledge prerequisite specifically provided for in 727(d)(1) would be nullified.

### (d) Conclusion to Section 727(d)(2)

The above demonstrates the exacting requirements that must be met before a court may revoke a discharge under section 727(d)(2). A debtor must have "<u>acquired property</u> that is <u>property of the estate</u>, or became entitled to acquire property that would be property of the estate..." and then, "knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. §727(d)(2) (emphasis added).

The assets Vision Bank contends the debtor "acquired" <u>after</u> bankruptcy and failed to report or surrender to the trustee are assets that Vision Bank says the debtor listed on financial statements he provided to it <u>before</u> bankruptcy. As such, the debtor could have listed those assets only on those financial statements if he had obtained ownership of or possession of them before he filed bankruptcy. Therefore, they could not have been "property of the estate" when the debtor "acquired" them. Moreover, the debtor could not have "acquired" them after bankruptcy because he already owned them or was in possession of them when he filed his bankruptcy case.

Therefore, even if Vision Bank can prove the allegations of Count I of its counterclaim, revocation of the debtor's discharge would not be warranted or required by section 727(d)(2).

### 3. Conclusion to Count I

Even if this Court takes the material allegations of the complaint as true and liberally construes the complaint in favor of the plaintiff, Vision Bank still cannot prove any set of facts that establish: (1) it did not know of such fraud until after the discharge was granted because it admits (by way of argument) that it knew, before the discharge was entered, that there were prepetition assets the debtor did not list on his petition; or

9

(2) the debtor acquired certain property after the case was filed that could be considered property of the estate because the bank admits the debtor had that property before filing the bankruptcy

Consequently, Count I of Vision Bank's counterclaim fails to state a claim for relief under 11 U.S.C.§ 727(d) and Count I of its counterclaim is due to be dismissed.

### B. Counts II and III

Counts II and III of Vision Bank's counterclaim seek judgments against the debtor for <u>specific</u> damages it claims it suffered, or debts it claims it is owed, because of the debtor's alleged prepetition fraud.

First, the debtor's discharge was entered on May 14, 2009. When it was, section 524(a) of the Bankruptcy Code enjoined the pursuit, prosecution, or collection of any such prepetition causes of actions or claims. 11 U.S.C. § 524(a).

Second, while the defendant argued at the hearing on this matter that its intent in Counts II and III was to seek revocation of the debtor's discharge based on the debtor's prepetition fraud, that is clearly not what is described or requested in those counts.[5] Neither count mentions revocation or section 727(d). Clearly, these counts are grounded in the prosecution of specific damages claimed or specific debts owed. So

---

[5] Count II seeks:

> judgment against Barnes for compensatory damages, together with interest thereon at the legal rate, plus additional, general, consequential, and incidental damages according to proof and/or disgorgement and restitution of all amounts and benefits received by Defendants as a result of their practices, plus punitive damages in a sum appropriate to punish defendants and to deter others similarly situated. Vision Bank also seeks its costs incurred herein, including attorneys' fees, accountants' fees, experts' fees to the extent allowable by law and such other, further legal and equitable relief as this Court may deem just and proper.

<u>Answer and Counterclaim</u> at 5, Docket No. 9.

Count III seeks:

> judgment against Barnes for disgorgement and restitution of all amounts and benefits received by him as a result of his being unjustly enriched. Vision Bank also seeks its costs incurred herein, including attorneys' fees, accountants' fees, experts' fees to the extent allowable by law and such other, further legal and equitable relief as this Court may deem just and proper.

<u>Answer and Counterclaim</u> at 6, Docket No. 9.

10

while a prepetition fraud practiced by a debtor against a creditor may, by virtue of 11 U.S.C. § 523(a)(2)(A), be sufficient to preclude the discharge of a debt owed to that creditor, it provides no basis for denying the debtor's discharge in total.[6] As the court in Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176 (10th Cir. 1991) explained, "As a general rule, to obtain relief under § 727(d)(1), it is insufficient that a debtor's fraud rendered a particular debt nondischargeable; claimant must allege that

---

[6] Notwithstanding that Vision Bank prefaced both Counts II and III with the language, "The allegations in each of the preceding paragraphs are incorporated herein by reference," even if those counts had mentioned revocation or section 727, as many courts agree, the fraud necessary to compel revocation of a discharge must be of a nature that would have precluded the granting of the discharge had it been discovered prior to the discharge being granted. Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991); United States v. Harrison, 366 B.R. 656, 660 (S.D. Tex. 2007); Tighe v. Guadarrama (In re Guadarrama), 284 B.R. 463, 469 (C.D. Cal. 2002); Citibank, NA v. Emery (In re Emery), 201 B.R. 37, 40 (E.D.N.Y. 1996), aff'd, 132 F.3d 892 (2nd Cir. 1998); First Nat'l Bank of Harrisburg v. Jones (In re Jones), 71 B.R. 682, 684 (S.D. Ill. 1987); Yules v. Gillis (In re Gillis), 403 B.R. 137, 144 (1st Cir. BAP 2009); Bowman v. Belt Valley Bank (In re Bowman), 173 B.R. 922, 924 (9th Cir BAP 1994); Fehrs v. Fehrs (In re Fehrs), 391 B.R. 53, 77 (Bankr. D. Idaho 2008); Kartzman v. Abdelmassia (In re Abdelmassia), 362 B.R. 207, 210 (Bankr. D.N.J. 2007); Fokkena v. Peterson (In re Peterson), 356 B.R. 468, 475 (Bankr. N.D. Iowa 2006); Lightfoot v. Landry (In re Landry), 350 B.R. 51, 55 (Bankr. E.D. La. 2006); United States Trustee v. Eppers (In re Eppers), 311 B.R. 826, 830 (Bankr. D.N.M. 2004); Swartz v. Spears (In re Spears), 291 B.R. 825, 828 (Bankr. C.D. Ill. 2003); Buckeye Retirement Co. v. Heil (In re Heil), 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003); Nese v. Lokay (In re Lokay), 269 B.R. 132, 138 (Bankr. W.D. Pa. 2001); Richardson v. McCullough (In re McCullough), 259 B.R. 509, 521 (Bankr. D.R.I. 2001); Johnson v. Chester Housing Authority (In re Johnson), 250 B.R. 521, 528 (Bankr. E.D. Pa. 2000); Kaler v. Olmstead (In re Olmstead), 220 B.R. 986, 994 (Bankr. D.N.D. 1998); State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600, 604 (Bankr. N.D. Ill. 1996); Staten Island Sav. Bank v. Scarpinito (In re Scarpinito), 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996); Elmira Sav. Bank v. George (In re George), 179 B.R. 17, 22 (Bankr. W.D.N.Y. 1995); Mazer v. Jones (In re Jones), 178 B.R. 1, 3 (Bankr. D.N.M. 1995); Anderson v. Poole (In re Poole), 177 B.R. 235, 239 (Bankr. E.D. Pa. 1995); First Interstate Bank of Sioux City v. Ratka (In re Ratka), 133 B.R. 480, 483 (Bankr. N.D. Iowa 1991); Worthen Bank & Trust Co. v. Perryman (In re Perryman), 111 B.R. 227, 228 (Bankr. E.D. Ark. 1990); Gibson v. Barber, 104 B.R. 425, 426 (Bankr. N.D. Fla. 1989); Miller v. Ping (In re Ping), 96 B.R. 96, 97 (Bankr. E.D. Ky. 1988); Govaert v. Topper (In re Topper), 85 B.R. 167, 169 (Bankr. S.D. Fla. 1988); Manufacturers Hanover Trust v. Shelton (In re Shelton), 58 B.R. 746, 748 (Bankr. N.D. Ill. 1986); Artinian v. Peli (In re Peli), 31 B.R. 952, 955 (Bankr. E.D.N.Y. 1983).

And even if true, the allegations in Counts II and III, as explained above and detailed below in note 7, would not have supported the denial of the discharge even had they been discovered prior to the discharge being granted. As stated earlier, proof that would support nondischargeability of a debt, may not support revocation of a discharge.

11

the entire discharge would not have been granted but for debtor's fraud." Id. at 180 (citations omitted).[7]

---

[7] See also, Tighe v. Guadarrama (In re Guadarrama), 284 B.R. 463, 470 (C.D. Cal. 2002); First Nat'l Bank of Harrisburg (In re Jones), 71 B.R. 682, 684 (S.D. Ill. 1987)("Thus, in order to state a claim under § 727(d)(1), the Bank must allege fraud of the Debtors in obtaining the discharge, not fraud of the debtors vis-a-vis the Bank."); Wisler v. White (In re White), 383 B.R. 366, 367 (Bankr. W.D. Pa. 2008); Humphreys v. Stedham (In re Stedham), 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005)("Under § 727(d)(1), it is the debtor's fraud in obtaining the discharge that qualifies as grounds for revocation and not the debtor's fraud vis-a-vis the creditor."); Yoppolo v. Sayre (In re Sayre), 321 B.R. 424, 427 (Bankr. N.D. Ohio. 2004)("As to this standard, however, a point of distinction needs to be made. The standard of fraud contemplated by § 727(d)(1) is not the same as which would warrant holding a debt nondischargeable."); Buckeye Retirement Co. v. Heil (In re Heil), 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003); Marshal v. Wilson (In re Wilson), 2002 WL 1067450, *4 (Bankr. D.N.H., May 28, 2002)("As a general rule to obtain relief under section 727(d)(1), it is insufficient that a debtor's fraud would have rendered a particular debt nondischargeable; rather, the party seeking revocation must allege that the entire discharge would not have been granted but for debtor's fraud."); State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600, 604 (Bankr. N.D. Ill. 1996)("It is fraud in procurement of the discharge that is focus of § 727(d)(1), not fraud with respect to the objecting creditor.); Citibank, NA v. Emery (In re Emery), 170 B.R. 777, 782 (Bankr. E.D.N.Y. 1994)("For purposes of 11 U.S.C. § 727(d), the fraud necessary to revoke discharge must be a fraud upon either the court or the entire creditor body. A fraud committed only upon the plaintiff will not suffice to revoke a discharge."), reversed on other grounds, 201 B.R. 37, 40 (E.D.N.Y. 1996), aff'd, 132 F.3d 892 (2nd Cir. 1998); Hiersche v. Brassard (In re Brassard), 162 B.R. 375, 380 n. 13 (Bankr. D. Me. 1994)("The essence of Hiersche's claim is his contention that, at the time Brassard obtained money from him, years before the bankruptcy, Brassard undertook to employ the funds for specific, ultimately unfulfilled, purposes, and that he knowingly misrepresented that Hiersche's right to repayment would be secured by a mortgage on real property. The matter is, quintessentially, a § 523(a)(2) dischargeability dispute. See discussion regarding § 523, infra. That Brassard may, as Hiersche alleges, have duped others in similar fashion in the pre-bankruptcy period is of no moment. An aggregation of § 523(a)(2) claims do not a § 727(d)(1) claim make."); In re White, 133 B.R. 206, 209 (Bankr. S.D. Ind. 1990)("The fraud to support such a challenge under section 727(d) must relate to a debtor's procurement (or attempted procurement) of a discharge, not just fraud vis-a-vis a creditor that might have rendered a particular debt nondischargeable. Thus, if the Bank were to challenge Mr. White's right to discharge under section 727(d), it would have to show that he is attempting to procure a discharge through fraud, not simply that the alleged fraud or other misconduct would have supported a determination that the debt to the Bank would have been nondischargeable if a dischargeability complaint had been timely brought.")(citations omitted)); NCNB Texas Nat'l Bank v. Hayes (In re Hayes), 127 B.R. 795, 797 (Bankr. E.D. Tex. 1991); Worthen Bank & Trust Co. v. Perryman (In re Perryman), 111 B.R. 227, 229 (Bankr. E.D. Ark. 1990)("Fraud of a debtor such as would warrant revocation of a discharge is fraud in procurement of a discharge and not mere fraud as to a particular creditor."); In re Lawson, 1988 WL 1015948, *1 (Bankr. D.N.D., March 8, 1988)("It is also worth noting that the "fraud" referred to in section 727(d)(1) is not fraud of the Debtors vis-a-vis a creditor itself but rather, is fraud in obtaining a discharge. Thus, the movant's objection based

12

Therefore, even if Vision Bank can prove that it was defrauded by the debtor before bankruptcy, that would not provide any legal basis for revoking the discharge previously granted to the debtor.

Therefore, even if this Court takes the material allegations of the complaint as true and liberally construes the complaint in favor of the plaintiff, even if Vision Bank proves facts that would have supported a complaint to determine the <u>dischargeability of a debt</u>, those facts would not support revocation of the debtor's discharge.

Consequently, Counts II and III of Vision Bank's counterclaim fail to state a claim for relief under 11 U.S.C.§ 727(d) and Counts II and III of its counterclaim are due to be dismissed.

### C. Count IV

Count IV of Vision Bank's counterclaim alleges that the debtor transferred the property listed on the financial statements for the purpose of hindering, delaying and defrauding Vision Bank in violation of the Alabama Fraudulent Conveyances Act, and that Vision Bank was injured and damaged as a result of that fraudulent transfer.[8]

In summary, Vision Bank requests: (1) a judgment against the debtor personally for avoidance of the transfers; (2) attorneys fees against the debtor personally; (3) an attachment against the property transferred to secure its retrieval; (4) an injunction to prohibit further disposition of the property by the debtor or his transferee; and (5) a receiver to take charge of the property transferred.[9]

---

upon section 523 does not establish the type of fraud necessary for revocation of discharge.") (citations omitted)); <u>Manufacturers Hanover Trust v. Shelton (In re Shelton)</u>, 58 B.R. 746, 748 (Bankr. N.D. Ill. 1986); <u>In re Barrup</u>, 53 B.R. 215, 220 (Bankr. D. Vt. 1985).

[8] Again, at the hearing, Vision Bank claimed that the intent of Count IV, like Counts II and III, was to state a claim for discharge revocation based on the conduct described therein even though the language contained in that count clearly does not purport to do that. See notes 6 and 7 above.

[9] Count IV seeks:

> judgment against Defendants, jointly and severally, for avoidance of the transfer to the extent necessary to satisfy Vision Bank's claim; an attachment or other provision or remedy against the assets transferred or other property of the transferees in accordance with the procedures described under applicable law; an injunction against further disposition by the Debtor or a transferee, or both, of the assets transferred or other property; or the appointment of a receiver to take charge of the assets transferred or of other property of the transferee; or any other relief the circumstances may require. In addition, Vision Bank also seeks

13

Count IV does not, under any construction, state a claim which if proved could possibly result in revocation of the debtor's discharge.[10] As stated before, for a fraud to be grounds for discharge revocation, it <u>must have been unknown pre-discharge</u> to the person seeking revocation. Vision Bank admits that by virtue of the financial statements submitted by the debtor, it became aware of the property that it claims was subsequently transferred by the debtor on June 3, 2008, well prior to the date that the debtor filed his bankruptcy petition. As such, it necessarily became aware that the debtor had not listed that same property on his bankruptcy petition on February 3, 2009, the date the petition was filed. Therefore, Vision Bank knew, by its own admission, about the discrepancy which forms the sole basis of its Count IV, well prior to entry of the debtor's discharge on April 14, 2009.

As quoted earlier, section 727(d)(1) provides, "The court shall revoke a discharge... if: (1) such discharge was obtained through the fraud of the debtor, and the requesting party **did not know of such fraud until after the granting of such discharge**." 11 U.S.C. §727(d)(1). In the instant case, that <u>lack of knowledge requirement</u> cannot be satisfied.[11]

Therefore, even if this Court takes the material allegations of the complaint as true and liberally construes the complaint in favor of the plaintiff, Vision Bank still cannot prove any set of facts that establish that it did not know of such fraud until after the discharge was granted.

---

> its costs incurred herein, including attorneys' fees to the extent allowed them by law and such other, further legal and equitable relief as this Court may deem just and proper.

<u>Answer and Counterclaim</u> at 7, Docket No. 9.

[10] Count IV, like Counts II and III, neither mentions nor requests revocation of the debtor's discharge, but like Counts II and III, Vision Bank prefaced Count IV with the language, "The allegations in each of the preceding paragraphs are incorporated herein by reference." But again, this preface cannot cure the counterclaim's deficiencies. As explained above, even if its counts had mention revocation or section 727, the fraud necessary to compel revocation of a discharge must be of a nature that would have precluded the granting of the discharge had it been discovered prior to the discharge being granted. See notes 6 and 7 above.

[11] To the extent, if any, Count IV seeks an adjudication of liability against the debtor personally, it is prohibited by the injunction provided for in 11 U.S.C. § 524(a). Furthermore, with respect to that portion of Count IV addressed to recovering fraudulently conveyed property from unnamed transferees of the debtor, Vision Bank has no standing. <u>Reynolds v. Wendy's Int'l, Inc. (In re Parker)</u>, 365 F.3d 1268, 1272 (11th Cir. 2004).

Consequently, Count IV of Vision Bank's counterclaim fails to state a claim for relief under 11 U.S.C.§ 727(d) and Count IV of its counterclaim is due to be dismissed.

## V.  Conclusion

Based on the above, the debtor's motion to dismiss Vision Bank's counterclaim is due to be granted.  The Court finds as a matter of fact and law that, "it appears beyond doubt that ... [Vision Bank] can prove no set of facts in support of ... [its] claim which would entitle ... [it] to relief."  887 F.2d at 1458 (parentheticals added).

A separate order will be entered contemporaneously with this Memorandum Opinion.

Dated:  March 24, 2010                    /s/Benjamin Cohen
                                          BENJAMIN COHEN
                                          United States Bankruptcy Judge